IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARY ROGERS, | : | Case Nos. 1:18-cv-889 |
| | : | 1:18-cv-825 |
| | : | 1:08-cr-02 |
| Plaintiff/Petitioner, | : | |
| | : | Judge Susan J. Dlott |
| | : | |
| v. | : | **ORDER DENYING PETITIONER'S** |
| | : | **MOTION TO VACATE, MOTION TO** |
| | : | **SHOW CAUSE, AND MOTION FOR** |
| PNC Bank, *et al.,* | : | **CONTEMPT, DENYING PLAINTIFF'S** |
| | : | **MOTION FOR TEMPORARY** |
| | : | **RESTRAINING ORDER AND** |
| Defendants/Respondent. | : | **PRELIMINARY INJUNCTION, AND** |
| | : | **GRANTING DEFENDANTS' MOTION** |
| | : | **TO DISMISS AND MOTION TO** |
| | : | **QUASH** |

This matter is before the Court on Petitioner Mary Rogers' Independent Action to Vacate and Set Aside Judgment Due to a Material Misrepresentation by the Government ("Motion to Vacate") (Doc. 73 in Case 1:08-cr-02), Motion for Order to Show Cause (Doc. 81 in Case 1:08-cr-02), and Motion for a Finding of Contempt (Doc. 90 in Case 1:08-cr-02), Plaintiff Mary Rogers' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 8 in Case 1:18-cv-825), Defendant PNC Bank, National Association's ("PNC") Motion to Dismiss Plaintiff's Complaint (Doc. 13 in Case 1:18-cv-825), and Movant PNC's Motion to Quash Subpoena (Doc. 1 in Case 1:18-cv-889). For the reasons set forth below, the Court will **DENY** Rogers' Motion to Vacate, **DENY** Rogers' Motion for Order to Show Cause, **DENY** Rogers' Motion for a Finding of Contempt, **DENY** Rogers' Motion for Temporary Restraining Order and Preliminary Injunction, **GRANT** PNC's Motion to Dismiss Plaintiff's Complaint, and **GRANT** PNC's Motion to Quash Subpoena.

1

## I.   BACKGROUND

### A.  Facts

These related matters all originate from Rogers' criminal conviction in Case 1:08-cr-02.[1] From 1995 through 2006, Rogers served as the Butler County Auditor.[2] In her capacity as Butler County Auditor, Rogers signed fraudulent documents to assist co-conspirator Orlando Carter, the majority owner of Dynus Corporation ("DC), in committing bank fraud. On December 31, 2004,[3] the same day that Rogers signed one of the fraudulent documents, a representative of National City Bank telephoned Rogers. According to the facts Rogers admitted in her plea agreement:

> During that telephone call, the defendant [Rogers] confirmed that the representative of DC was as an authorized representative of Butler County and that the defendant, in her capacity as Butler County Auditor, had the authority to sign the "Resolution." Rogers knew she did not have such authority. Relying, in part, on the defendant's actions, National City advanced $4,000,000 to DC on the condition that DC would return the funds to National City if DC did not obtain the Opinion of Counsel concerning the Leases. DC did not obtain an Opinion of Counsel from the Butler County Attorney. However, DC did not return the advanced funds to National City.

(Doc. 2 at PageID 20.)

On February 4, 2008, Rogers appeared at a change of plea hearing. The Federal Bureau of Investigation Special Agent Kevin Gormley reiterated the facts stated in Roger's plea

---

[1] Unless otherwise specified, the Document and PageID numbers used in this Order are taken from Rogers' underlying criminal case, *United States v. Mary C. Rogers*, Case No. 1:08-cr-02.

[2] Rogers admitted the underlying facts in her plea agreement. (Doc. 2.) The Court sealed the Information, Plea Agreement, Statement of Facts, and Plea Hearing in 2008 to protect an ongoing investigation. (*See* Docs. 3, 5, 6, and the Notation Order Granting 6.) Most of these documents were unsealed on February 25, 2008. (Doc. 16.) As the investigation at issue ended more than 10 years ago, any Order that purports to hold any remaining document or transcript under seal is hereby modified to permit disclosures relevant to Rogers' motions in her underlying criminal case and in all subsequent civil actions.

[3] The exact date of the telephone call and release of funds is found in the Information to which Rogers ultimately pled guilty. (Doc. 1 at PageID 4.)

agreement, including those related to the $4,000,000 advance National City provided to DC that was never returned. (Doc. 86 at PageID 560–565.) Rogers assured the Court that she heard "everything Agent Gormley just said." (Doc. 86 at PageID 565.) In an abundance of caution, the Court reiterated that Rogers was accused, among other things, of providing documents and, "As a result of all or some of these documents, National City Commercial Corporation advanced $4 million to DC . . . [and] DC did not return the advanced funds to National City." (*Id.* at PageID 566.) The Court then engaged Rogers in the following discussion:

> [Court:] Is there anything the agent said which is in any fashion incorrect?
> (The defendant and [her counsel] confer privately.)
> THE DEFENDANT: No.
> THE COURT: Is there anything that I said in summary of the agent which is in any fashion incorrect?
> THE DEFENDANT: No.
> THE COURT: So, the Statement of Facts as read under oath by the agent is correct?
> THE DEFENDANT: Yes, it is.

(*Id.* at PageID 567.) Rogers then proceeded "to plead guilty here today because [she is] in fact guilty of the two offenses charged in the Information." (*Id.* at PageID 568.)

Rogers pled guilty to Conspiracy to Commit Bank and Mail Fraud, in violation of 18 U.S.C. § 1349 and Filing a False Income Tax Return, in violation of 26 U.S.C. § 7206(1). The Honorable Sandra S. Beckwith sentenced Rogers, in part, to a twenty-four-month period of imprisonment, five years of supervised release, $18,005.04 in restitution to the Internal Revenue Service, and $4,000,000 in restitution to National City Bank. (Doc. 42.) At her sentencing hearing, Rogers and her attorney challenged the amount owed to the Internal Revenue Service, but made no such challenge to the amount owed to National City Bank. (*See* Doc. 87 at PageID 582.) After hearing her tearful apology, the Court again asked, "But you admit that you did sign a number of documents . . . that ultimately caused National Bank to loan money to Dynus

Corporation presumably on the credit of Butler County; correct?" To which, Rogers replied, "Yes, Ma'am. Yes, Your Honor." (*Id.* at PageID 587.)

In the years since Rogers' sentencing, several events have transpired. First, PNC Bank acquired National City Bank. Second, Orlando Carter wrote to the Office of the Comptroller of the Currency ("OCC") requesting that PNC Bank "validate a $4,000,000 debt with CBST Acquisition, LLC," a DC subsidiary. (*See* Doc 73-1 at PageID 402.) The OCC responded:

> In correspondence sent to this office, you requested the bank validate a $4,000,000 debt with CBST Acquisition, LLC. The bank provided a copy of note signed by you on December 31, 2003 in the amount of $250,000.00. The bank stated this is the only debt it has on file. The loan was a commercial loan and the retention period for this type of loan is 10 years.

(*Id.*) Third, relating to one of the many civil cases Carter and Rogers have filed, Carter apparently requested that the United States Attorney's Office for the Southern District of Ohio provide "certified and authenticated bank documents provided by PNC under penalty of perjury to be true and correct showing such $4,000,000 debt." (Doc. 73 at PageID 396.) The United States Attorney's Office failed to provide such documents. (*See* Doc. 73-1 at PageID 400–401.)

Relying on these events, Rogers contends that the Court should vacate the criminal sentence requiring her to pay $4,000,000 restitution to PNC. According to Rogers, "New evidence provided by the U.S. Attorney on February 8, 2018, confirms that this Court relied upon a material misrepresentation by the Government during sentencing regarding the origination and existence of a certified and authenticated $4,000,000 loan guarantee ("debt") between CBST Acquisition LLC, A Dynus Corporation subsidiary ("Dynus") and National City Bank nka PNC Bank ("PNC")." (Doc. 73 at PageID 392–393.)

## B. Procedural Posture

The Honorable Sandra S. Beckwith presided over the criminal case underlying the instant motions. When Judge Beckwith took Senior Status, the Clerk of Court reassigned this case to the Honorable Michael R. Barrett. (Doc. 72.) When Judge Barrett recused himself, the Clerk of Court reassigned the post-conviction criminal matters—and, consequently, the related civil cases—to the undersigned. (Doc. 82.)

### a. *United States v. Rogers*, Case Number 1:08-cr-02

Plaintiff, acting *pro se*, filed a Motion to Vacate (Doc. 73) seeking to vacate her criminal conviction or modify the restitution imposed based on "new evidence." She attaches the letter OCC sent to Orlando Carter and the United States Attorney's Office's Responses to Orlando Carter's Second Set of Admissions and Interrogatories as the newly discovered evidence of misrepresentation. The United States objects to Rogers' Motion to Vacate on the bases that Rogers expressly waived her right to file such an action, the action is time-barred, and her action lacks merit.

Rogers also filed a Motion to Show Cause (Doc. 81) seeking "an order requiring the government to appear in writing or person on or before April 12, 2019 and SHOW CAUSE as to why Rogers' request for Summary Judgment for all relief requested should not be granted by producing" bank records or OCC documentation of the $4,000,000 advance from National City. (Doc. 81 at PageID 511 (emphasis in original).) The United States did not respond to Rogers' Show Cause Motion.

While these motions were pending, Rogers filed a Motion for a Finding of Contempt Against the U.S. Attorney for Failure to Comply (Doc. 90) for failing to produce subpoenaed

5

records of the $4,000,000 advance from 2004. The United States did not respond to Rogers' Motion for a Finding of Contempt.

### b. *Rogers v. National City Bank, nka PNC Financial Services Group*, Case Number 1:18-cv-825

Rogers, again acting *pro se*, initiated this civil action against PNC alleging that specific PNC executives and others conspired with the United States Department of Justice, on or before January 2008, to falsely claim that a $4,000,000 debt exists. According to Rogers, these actions caused and continue to cause her to suffer financial and emotional harm and damage to her reputation. Rogers filed a Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 8). In response, PNC filed a Motion to Dismiss Plaintiff's Complaint (Doc. 13). In moving to dismiss Rogers' complaint, PNC contends that Rogers lacks standing because she was not a party to the loan at issue, that her claims are time-barred, and that she fails to state a claim upon which relief can be granted.

### c. *Rogers v. USA*, Case Number 1:18-cv-889

This civil case began when Rogers filed her Independent Action to Vacate and Set Aside Judgment Due to a Material Misrepresentation by the Government in her criminal case. Although the United States is the respondent in this action, Rogers subpoenaed various documents or statements from PNC and its Senior Corporate Counsel. (*See* Doc. 1-1 in Case 1:18-cv-889.) PNC filed a Motion to Quash Subpoena (Doc. 1) on the basis that it seeks information that would or could reveal the existence of a Suspicious Activity Report ("SAR").

## II. LEGAL STANDARDS

### A. Rogers' Motion to Vacate Sentence

Rogers' *pro se* Motion to Vacate references Criminal Rule of Procedure 60. However, Rule 60(b) applies to victims' rights. Rogers admitted in her plea agreement and at her change

of plea hearing that she perpetrated the crime in this case. She is not the victim. In addition, Rule 60(b)(5)(C) only permits a victim to reopen a plea or sentence if "the accused has not pleaded to the highest offense charged." Rogers pled guilty to both offenses charged against her. Thus, Rule 60 does not apply.

The Court will construe Rogers' Motion to Vacate as a motion to vacate, set aside or correct a federal sentence pursuant to 28 U.S.C. § 2255. An inmate seeking to set aside a sentence pursuant to § 2255 must prove by a preponderance of the evidence one of the following bases for relief: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006); *Hairston v. United States*, 664 F. App'x 485, 489 (6th Cir. 2016).

### B. PNC's Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, a complaint must comply with Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Rule 8(a)).

A complaint must include sufficient facts to state a claim that is plausible on its face and not speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. A complaint must contain "either direct or

7

inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014) (citation omitted). However, it "does not need detailed factual allegations" or "heightened fact pleading of specifics." *Twombly*, 550 U.S. at 555, 570. A district court examining the sufficiency of a complaint must accept well-pleaded facts as true, but not legal conclusions or legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678–79; *DiGeronimo Aggregates*, 763 F.3d at 509.

## III. ANALYSIS

All of Rogers' arguments in all of these cases are predicated on her contention that because neither the OCC (after requesting it from PNC) nor the United States Attorney's Office can provide appropriate documentation of the $4,000,000 advance more than a decade after it issued, the loan never existed. Rogers attempts to characterize this lack of paperwork availability years later as "new evidence" that the debt never existed. Rogers' contention lacks merit for several reasons.

First, Rogers, accompanied by counsel on December 31, 2007, "freely and voluntarily"[4] admitted in her plea agreement that her criminal activity caused the $4,000,000 loan to be advanced. Specifically, Rogers admitted, among other things, to the following statement of facts:

> From August 2004 to March 2006 Rogers conspired to commit bank fraud and mail fraud. Rogers and her co-conspirators falsely represented to National City Bank, a federally insured financial institution that certain representatives of DC were authorized to act on behalf of Butler County and that DC had installed telecommunications equipment in Butler County, Ohio. **National City relied, in part, upon these false representations when it paid DC $4,000,000.**

---
[4] Plea Agreement, Doc. 2 at PageID 16.

> More specifically, on August 9, 2004 Rogers signed, in her capacity as Butler County Auditor, a Mutual Confidentiality Agreement between DC and Butler County. On September 15, 2004 Rogers signed, in her capacity as Butler County Auditor, a Master Certificate of Incumbency certifying that a co-conspirator was an authorized representative of Butler County. On December 31, 2004, a representative of DC went to the defendant's home and obtained the defendant's signature, in her capacity as Butler County Auditor, on a document titled "Resolution." The "Resolution" named the defendant and the representative of DC as "authorized representatives" of Butler County and authorized them to execute, on behalf of Butler County, certain leases with national City Commercial Corporation ("National City") with an aggregate principal amount not to exceed $5,292,643.37 (the "Leases"). Additionally, the representative of DC obtained the defendant's signature, in her capacity as Butler County Auditor, on a document titled "Certificate of Incumbency" dated December 28, 2004. This document identified the defendant and the representative of DC as "authorized representative" of Butler County.
> On that same day, a representative of National City called the defendant to check on the status of an Opinion of Counsel from the Butler County Attorney concerning the Leases. During that telephone call, the defendant confirmed that the representative of DC was as an authorized representative of Butler County and that the defendant, in her capacity as Butler County Auditor, had the authority to sign the "Resolution." Rogers knew she did not have such authority. **Relying, in part, on the defendant's actions, National City advanced $4,000,000 to DC on the condition that DC would return the funds to National City if DC did not obtain the Opinion of Counsel concerning the Leases. DC did not obtain an Opinion of Counsel from the Butler County Attorney. However, DC did not return the advanced funds to National City.**

(Doc. 2 at PageID 19–20 (emphasis added).) If Rogers desired to force the Government to prove this debt's existence, she had absolute power to do so before she entered into her plea agreement. However, after consulting with counsel, she elected to enter into a plea agreement (and reap the accompanying rewards) rather than make the Government prove its case against her.

Second, as part of her change of plea on February 4, 2008—again accompanied by counsel—Rogers admitted under penalty of perjury that she was, in fact, guilty of both counts

charged in the Information. Paragraph 23 of the Information to which Rogers pled guilty provides, "On December 31, 2004 National City released $4,000,000 of the proposed $5,292,643.37 to DC on condition that DC provide National City with an Opinion of Counsel from the Butler County Attorney certifying the efficacy of the alleged contract between DC and Butler County." (Doc. 1 at PageID 5.) In addition, at the plea hearing, the Court summarized Agent Gormley's statement of the allegations, stating in part, "As a result of all or some of these documents, National City Commercial Corporation advanced $4 million to DC . . . [and] DC did not return the advanced funds to National City." (Doc. 86 at PageID 566.) Rogers again admitted that those allegations were true. Rogers had every opportunity to challenge the Government to produce proof of these allegations before she changed her plea to guilty, but she chose not to do so.

Third, at her sentencing on July 26, 2011—again accompanied by counsel—the Court listened to Rogers' tearful apology for her criminal behavior before asking, "But you admit that you did sign a number of documents . . . that ultimately caused National Bank to loan money to Dynus Corporation presumably on the credit of Butler County; correct?" To which, Rogers replied, "Yes, Ma'am. Yes, Your Honor." (Doc. 87 at PageID 587.) Thus, Rogers admitted as late as 2011 that the debt in question existed and that her fraudulent activities helped create the debt.

Fourth, co-conspirator Orlando Carter elected to challenge the Government's evidence rather than plead guilty. At Carter's trial, the Government offered Exhibit 3.6 into evidence. Government Exhibit 3.6—as testified by James Smith, General Manager of DC subsidiary CBS Technologies—is the guaranty Smith signed, dated December 31, 2004, by which National City agreed to provide the $4,000,000 wire transfer. (Trial Transcript in Case No. 1:08-cr-51, Doc.

10

81 at PageID 585–587.) Others involved also confirmed the $4,000,000 advance. (Doc. 132 in Case No. 1:08-cr-51 at PageID 2762–2764; Doc. 79 in Case No. 1:08-cr-51 at PageID 481–483.) Indeed, Carter himself admitted that National City ultimately deposited a total of $6,500,000 into his accounts. (Doc. 134 in Case No. 1:08-cr-51 at PageID 2952.) The jury heard this evidence and convicted Carter on all of the 11 counts charged. (Doc. 75.)

Fifth, if—in 2017, 2018, or 2019—neither PNC (as successor to National City) nor the United States Attorney's Office produces documentation of the $4,000,000 advance in 2004, it does not prove that the debt never existed. The paperwork could have been lost when PNC acquired National City or destroyed in the regular course of business. The OCC letter on which Rogers relies specifically states, "The loan was a commercial loan and the retention period for this type of loan is 10 years." (Doc. 73-1 at PageID 402.)

Sixth, as part of her plea agreement, Rogers waived her right to challenge the sentence imposed. Specifically, the agreement provides, "The defendant further agrees not to contest the sentence in any post conviction [sic] proceeding, including but not limited to a proceeding under 28 U.S.C. § 2255." (Doc. 2 at PageID 12.) The law is well settled that, "Any right, even a constitutional right, may be surrendered in a plea agreement if that waiver was made knowingly and voluntarily." *United States v. Amos*, 604 F. App'x 418, 421 (6th Cir. 2015) (quoting *United States v. Ashe*, 47 F.3d 770, 775–776 (6th Cir. 1995)). As noted above, Rogers' waiver was made knowingly and voluntarily and with the advice of counsel. Thus, she waived her right to contest her sentence at this late date.[5]

---

[5] The United States correctly notes that Rogers' petition is also time-barred pursuant to 28 U.S.C. § 2255(f). However, the Court need not address the timeliness issue as the petition fails on its merits. *Pough*, 442 F.3d at 964–965.

Finally, Rogers' co-conspirator, Orlando Carter, previously attempted a second attack on his sentence based on the same January 2017 OCC letter and argument. The Court denied Carter's petition. The Sixth Circuit affirmed the refusal to allow a second or successive motion to vacate on that basis, stating, "[T]he failure of a successor bank to produce records in response to requests about matters more than ten years in the past, viewed in light of the trial evidence demonstrating the existence of the guaranty, is insufficient 'to establish by clear and convincing evidence that no reasonable factfinder would have found [Carter] guilty of the offense.'" *In re: Orlando Carter*, Case No. 18-3080 (6th Cir. April 26, 2018) (copy attached to Doc. 76 at PageID 437–439).

For all of these reasons, then, Rogers' contention that the $4,000,000 debt never existed lacks merit. As a result, her legal efforts based on this meritless contention must fail.

## IV. CONCLUSION

For the reasons set forth above, the Court hereby **DENIES** Rogers' Motion to Vacate (Doc. 73 in Case 1:08-cr-02), **DENIES** Rogers' Motion for Order to Show Cause (Doc. 81 in Case 1:08-cr-02), **DENIES** Rogers' Motion for a Finding of Contempt (Doc. 90 in Case 1:08-cr-02), **DENIES** Rogers' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 8 in Case 1:18-cv-825), **GRANTS** PNC's Motion to Dismiss Plaintiff's Complaint (Doc. 13 in Case 1:18-cv-825), and **GRANTS** PNC's Motion to Quash Subpoena (Doc. 1 in Case 1:18-cv-889). These cases will be closed, and these matters will be terminated from the Court's docket.

**IT IS SO ORDERED**.

Dated: April 23, 2019        S/Susan J. Dlott_____
                             Judge Susan J. Dlott
                             United States District Court